Maria–Kelly F. YNIGUEZ and Jaime P. Gutierrez, Plaintiffs,

v.

Rose MOFFORD, individually and as Governor of the State of Arizona, Robert K. Corbin, individually and as Attorney General of the State of Arizona, and Catherine Eden, individually and as Director of the Department of Administration of the State of Arizona, Defendants.

No. CIV 88–1854 PHX PGR.

United States District Court, D. Arizona.

April 3, 1990.

Robert J. Pohlman, Phoenix, Ariz., for plaintiffs.

Anthony B. Ching, Sol. Gen., Phoenix, Ariz., for defendants.

## MEMORANDUM OPINION AND ORDER

ROSENBLATT, District Judge.

On February 6, 1990, the court declared that Article XXVIII of the Arizona Consti-

tution, entitled "English as the Official Language", was unconstitutional on its face in violation of the First Amendment of the United States Constitution, 730 F.Supp. 309. Because Governor Rose Mofford, the sole remaining defendant, has stated that she has no intention of appealing that ruling, two post-judgment motions to intervene are pending before the court: the State of Arizona ex rel. Attorney General Robert K. Corbin's Motion to Intervene, filed March 2, 1990, and the Arizonans for Official English Committee and Robert D. Park's Motion to Intervene, filed February 15, 1990. Also pending is defendant Corbin's Motion to Alter or Amend Judgment, filed February 16, 1990. For the reasons set forth herein, as supplemented by the reasons stated by the court during its bench ruling on these motions on March 26, 1990, all three motions will be denied.

## MOTION TO ALTER OR AMEND JUDGMENT

■ Defendant Corbin, in a timely manner, has requested pursuant to Fed.R. Civ.P. 59(e) that the judgment entered in this action be altered or amended because the court's memorandum opinion and order failed to dispose of the defendants' request that the state law question be certified to the Arizona Supreme Court. Assuming, without deciding, that Corbin has standing to bring this motion in light of his dismissal as a party defendant, the court finds that such a certification would be inappropriate.

The court initially notes that neither the defendants' Motion to Supplement Argument, in which the certification issue was raised in one conclusory paragraph, nor Corbin's instant motion specifies what the "state law question" is that should be certified. In light of Corbin's reply memorandum in support of the instant motion, the court construes the motion as requesting that the court certify to the Arizona Supreme Court the question of whether the

narrow interpretation of Article XXVIII proffered by Corbin in Attorney General Opinion I 89–009 is a valid construction of the Article.

While Corbin is correct that the court's opinion did not specifically resolve the certification issue, an inadvertence on the court's part, the conclusion that the certification request must be denied is implicit in court's reasoning underlying its denial of the defendants' request that the court abstain from deciding the constitutionality of Article XXVIII. Given this court's conclusion that Article XXVIII is not obviously susceptible of a construction that would eliminate its unconstitutional overbreadth, any certification of the validity of the proffered narrowing construction would be improper inasmuch as it would be "ask[ing] a state court if it would care in effect to rewrite a statute." *City of Houston, Texas v. Hill*, 482 U.S. 451, 471, 107 S.Ct. 2502, 2515, 96 L.Ed.2d 398 (1987).

The Court is unpersuaded by Corbin's assertion that *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), requires certification given the Supreme Court's acknowledgement in that case that its decision to certify a narrowing construction of the state statute proffered by the state attorney general, rather than deciding itself whether the state statute was readily susceptible of the attorney general's interpretation, was due to the unusual factual and procedural circumstances of that case. The unique situation which led to certification in *American Booksellers* is not present here and under the circumstances of the instant case, certification would entail both disadvantage and cost since it would only unnecessarily prolong the limbo of uncertainty that Article XXVIII created for those adversely affected by its chilling effect.[1]

---

1. The fact that this court's opinion declaring Article XXVIII facially unconstitutional was not issued for more than nine months after submission does not indicate, as Corbin asserts, that there was no urgency in this case. If the delay in ruling indicates anything, it is how overtaxed the court's limited resources have become by its

ever increasing caseload. Had the court had the luxury of the resources that the parties committed to this action, such as the eight attorneys and almost 800 hours of work that the plaintiffs submit they put into the prosecution of this action, the court would have ruled in the expedited manner that this type of case deserves.

## CORBIN'S MOTION TO INTERVENE

■ Corbin, on behalf of the State of Arizona, has moved to intervene as a defendant in this action so that he may participate in all post-judgment proceedings, including an appeal. Both Corbin and the State were named defendants in this action and both filed motions to dismiss which the court subsequently granted. Corbin's assertion that he now has standing to intervene on the State's behalf is premised solely on 28 U.S.C. § 2403(b), which provides in part that when the constitutionality of a state statute is drawn into question the court shall certify that fact to the state attorney general and shall permit the state to intervene to present evidence, if appropriate, and to argue the constitutionality of the statute.

The court has no authority to permit Corbin to intervene under § 2403(b) because that statute authorizes intervention by a state attorney general only in actions "to which the State or any agency, officer, or employee thereof is not a party". *Sovereign News Co. v. Falke,* 448 F.Supp. 306, 314 n. 13 (N.D.Ohio 1977), *remanded on other grds sub nom. Sovereign News Co. v. Corrigan,* 610 F.2d 428 (6th Cir.1979). It is undisputed that Governor Mofford is still a party defendant herein, and that the state, Corbin and Department of Administration Director Eden were formerly party defendants. It is further undisputed that Corbin, on behalf of himself and the other defendants, has already been allowed to present evidence and argue the constitutionality of Article XXVIII.

The court is aware of nothing in the legislative history of § 2403(b), and Corbin cites to none, that would require it to ignore the statute's plain language under the circumstances of the instant case. A denial of Corbin's request to intervene in no way ignores § 2403(b)'s spirit and purpose of ensuring that a state has the opportunity to defend the constitutionality of its laws. That opportunity is present in this case and if it is not further exercised, it is only because Governor Mofford determines that the state's sovereign interests would be best served by foregoing an appeal.

## OFFICIAL ENGLISH COMMITTEE & PARK'S MOTION TO INTERVENE

The Arizonans for Official English Committee ("Committee"), the main proponent of the initiative that placed Article XXVIII on the ballot, and Robert D. Park, individually and as chairman of the Committee, have moved to intervene in this action for the purpose of taking an appeal. They seek intervention both as of right and permissively, pursuant to Fed.R.Civ.P. 24.

■ The court initially notes that the Committee and Park have failed to comply with Fed.R.Civ.P. 24(c)'s requirement that their motion to intervene be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The proposed notice of appeal submitted as an attachment to the intervention motion does not satisfy Rule 24(c)'s requirement. Without condoning the procedural defect, and notwithstanding that even in post-judgment intervention cases it has been held that the failure to file the requisite separate pleading is fatally defective to a motion to intervene, see e.g. *Lebrecht v. O'Hagan,* 96 Ariz. 288, 394 P.2d 216 (1964) (construing an identical Ariz.R.Civ.P. 24(c)); *Hobson v. Hansen,* 44 F.R.D. 18 (D.D.C. 1968); *Usery v. Bd. of Public Education,* 418 F.Supp. 1037 (W.D.Pa.1976), the court believes that the importance of this issue demands that it resolve the merits of the motion to intervene.

■ In order to be able to intervene the Committee must first have the legal capacity to be a participant in this litigation. Inasmuch as the Committee has stated that it is an unincorporated association without capacity to sue or be sued in its common name under Arizona law, its capacity to intervene is dependent upon it coming within the purview of Fed.R.Civ.P. 17(b)(1)'s exception that an unincorporated association "may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States." The Committee's contention that it has "representational capacity" is misdirected because while an unincorporated association's representation of its members

may give it standing to intervene, it does not give it the legal capacity to intervene. The court will assume for the purpose of the instant motion that Rule 17(b)(1) has been satisfied here because the underlying action involves a substantive constitutional right.

■ Although post-judgment motions to intervene are generally disfavored, see 7C C. Wright, A. Miller, & M. Kane, Federal Practice at Procedure: Civil 2d § 1916 at 444–45 (1986), post-judgment intervention for purposes of appeal may be appropriate if certain requirements are met, the first of which is that the intervenors must act promptly after entry of judgment. *Legal Aid Society of Alameda County v. Brennan*, 608 F.2d 1319, 1328 (9th Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). Since the Committee and Park filed the instant motion nine days after the judgment was entered, which was well within the time period for filing a notice of appeal, the court finds that the motion to intervene is timely. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–96, 97 S.Ct. 2464, 2470–71, 53 L.Ed.2d 423 (1977).

The second requirement is that the intervenors must meet traditional standing criteria. *Legal Aid Society of Alameda County*, 608 F.2d at 1328. Although the Committee and Park correctly assert that this circuit has adopted the general rule that a party seeking to intervene need not possess the standing necessary to initiate the lawsuit, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir. 1977), *rev'd sub nom. and vacated on other grds, Bryant v. Yellen*, 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980); *accord, Portland Audubon Society v. Hodel*, 866 F.2d 302, 308 n. 1 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989), standing necessary to support an appealable interest must be present here given the purpose behind the Committee's and Park's desire to intervene, i.e. to prosecute an appeal because the named parties are either unwilling or unable to do so. *Imperial Irrigation Dist.*, 559 F.2d at 521; *Fisher v. Tucson School Dist. No. One*, 625 F.2d 834, 837 n. 1 (9th Cir.1980); *Legal Aid Society of Alameda County*, 608 F.2d at 1328 n. 9. The court concludes that none of the interests that the Committee and Park assert they possess in this action are sufficient to grant them standing to intervene, whether as of right or permissively, for purposes of taking an appeal; furthermore, none of those interests is sufficient to amount to the apparently lesser "significantly protectable interest" required by Fed.R.Civ.P. 24(a)(2), *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971), an interest that in this circuit need not be a specific legal or equitable interest as long as it is a protectable interest in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action. *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir.1981).

■ An unincorporated association, such as the Committee, may have standing in its own right if it seeks judicial relief from an injury to itself or to vindicate its own rights. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). The only particularized injury allegedly suffered by the Committee is that the court's declaration of Article XXVIII's unconstitutionality has rendered "for naught" the substantial labors and resources it committed to the promotion of the initiative that was enacted as Article XXVIII. Even assuming that the court's decision nullified the Committee's efforts, although no such nullification has actually occurred, the court does not believe such an impairment to the Committee's institutional interests is sufficient to meet either Article III's fundamental injury-in-fact requirement or Rule 24(a)(2)'s interest requirement.

The court realizes that the Ninth Circuit Court of Appeals has allowed public interest groups, such as initiative proponents, to intervene in actions to defend the product of the groups' efforts. See *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir.1983); *Washington State Bldg. & Const. Trades Council v. Spellman*, 684 F.2d 627 (9th Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282

(1983); *State of Idaho v. Freeman*, 625 F.2d 886 (9th Cir.1980). The court does not consider these cases dispositive of the instant circumstances because the opinions are, unfortunately, all lacking in any illuminating legal analysis on the issue of intervention and, more importantly, do not involve post-judgment intervention for the purpose of taking an appeal. Such an intervention is, as the Committee and Park point out, a "distinctly different situation" from the normal intervention, and one that requires a stronger showing of interest to justify intervention. See 7C C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 2d § 1916 at 444–45. The court does not believe under these circumstances that the mere fact that an organization is a proponent of an initiative proposition, and has an abstract concern that is affected by the adjudication, is sufficient to create the concrete injury necessary for non-representational organizational standing.

■ The Committee, even in the absence of a sufficient injury to itself, may still obtain associational or representational standing, although the possibility of such standing does not eliminate or attenuate the case or controversy requirement of Article III. *Warth v. Seldin*, 422 U.S. at 511, 95 S.Ct. at 2211. One of the requirements for such standing, and the only one at issue here, is that the members of the organization must otherwise have standing in their own right. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Although the standing of a single member is sufficient to meet this requirement, *E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 885 (9th Cir.1986), the Committee has not established that any of its members would have the standing necessary to have an appealable interest in this action. To the extent that the Committee, and/or Park, are attempting to represent non-members who voted in favor of the proposition, they may not do so under the prudential limitations on standing. See *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

The only one of its members identified by the Committee is Park, its chairman. The Committee and Park allege that he has a sufficient interest because the court's decision herein nullified his vote in favor of Article XXVIII. While there is a concept referred to as "voter standing" that has arisen in malapportionment cases, see e.g., *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and its progeny, wherein the Supreme Court has found that disadvantaged voters had a sufficient particularized and objectively ascertainable injury in fact to confer standing because their votes had been diluted relative to the vote of other citizens of the same state, *In re United States Catholic Conference*, 885 F.2d 1020, 1028 (2d Cir.1989), such is not the case here. Even assuming that Park's vote has been "nullified", and it has not, his constitutional right to vote has not been impaired or diminished by the court's action. While the fact that Park voted in favor of the proposition that enacted Article XXVIII may constitute an interest, it is too remote and general to constitute a significantly protectable interest for purposes of Rule 24(a)(2). *Fox Valley Reproductive Health Care Center v. Arft*, 82 F.R.D. 181, 182 (E.D.Wis.1979).

■ Furthermore, none of the reasons cited by the Committee and Park in support of their request to intervene permissively pursuant to Rule 24(b)(2) constitute grounds for finding that they have standing to appeal. For example, standing cannot be predicated upon a mere interest in the establishment of legal precedent, *United States v. Imperial Irrigation Dist.*, 559 F.2d at 521, nor on the fact that a conclusion that the Committee and Park do not have standing would perhaps leave no one willing and able to appeal. See *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974); *In re U.S. Catholic Conference*, 885 F.2d at 1031.

■ Even assuming that the Committee and Park meet the threshold interest test for intervention as of right, which the court finds they do not, the possibility that the

court's declaration of Article XXVIII's unconstitutionality could affect their interests is too tenuous to meet the impairment requirement of Rule 24(a)(2). See *In re Benny*, 791 F.2d 712, 721 (9th Cir.1986). While stare decisis may, in appropriate circumstances, supply the practical impairment required for intervention of right, *Smith v. Pangilinan*, 651 F.2d at 1325, the degree of stare decisis arising from this court's decision is insufficient to be a practical impairment because, inasmuch as it is not binding on the Arizona state courts, see *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379–80, 60 L.Ed.2d 994 (1979), it does not foreclose any rights of the Committee or Park in any future state court proceeding arising out of Article XXVIII. *Cf. Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir.1977). Consequently, there has been no "nullification" of any vote cast in favor of the Article and no disenfranchisement of any voter.

If the Committee and Park had the requisite impaired interest necessary for intervention, which they do not, they would meet the inadequate representation requirement of Rule 24(a)(2). Since a party seeking to intervene as of right need only meet the minimal burden of showing that the representation of his interest may be inadequate, *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972), Governor Mofford's stated intention not to appeal the court's decision indicates that the present defendants do not fully represent the interests of the Committee and Park. *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir.1980). The court notes, however, that the assertion by the Committee and Park that the representation of the defendants is inadequate because the defendants did not raise certain issues concerning Article XXVIII's constitutionality that the Committee and Park would raise on appeal militates against a finding that the motion to intervene was timely filed. If the Committee and Park had any such arguments, they should have moved to intervene prior to the court's decision declaring Article XXVIII unconstitutional so that appropriate discovery could have been taken and more complete legal arguments could have been presented to the court. Therefore,

IT IS ORDERED that Defendant Corbin's Motion to Alter or Amend Judgment (doc. # 82) is denied.

IT IS FURTHER ORDERED that the State of Arizona Ex Rel Attorney General Robert K. Corbin's Motion to Intervene (doc. # 92) is denied.

IT IS FURTHER ORDERED that the Arizonans for Official English Committee and Robert D. Park's Motion to Intervene (doc. # 78) is denied.