RESORT TIMESHARE RESALES, INC., a Florida corporation, and Lawrence Cohen, Plaintiffs,

v.

George STUART, Jr., as Secretary of the Florida Department of Professional Regulation, and Robert A. Butterworth, as Attorney General of the State of Florida, Defendants.

No. 90–6166–Civ.

United States District Court, S.D. Florida.

May 21, 1991.

Frederick J. Ward, Baker & Hostetler, for petitioner.

Michael E. Greene, for plaintiffs.

Manuel E. Oliver, Arthur C. Wallberg, Asst. Attys. Gen., for defendants.

ORDER ON MOTION OF THE AMERI-
CAN RESORT AND RESIDENTIAL
DEVELOPMENT ASSOCIATION TO
INTERVENE, OR, IN THE ALTER-
NATIVE, TO APPEAR AS AMICUS
CURIAE

PAINE, District Judge.

■ Plaintiffs, RESORT TIMESHARE RESALES, INC., and LAWRENCE CO-HEN (collectively "RTR") have sued to challenge the constitutionality of Section 475.01(1)(c), Florida Statutes, which, pursuant to an amendment effective October 1, 1989 (the "Amendment"), requires persons who advertise timeshare units for sale or rent to obtain a real estate broker's license. A violation of Section 475.01(1)(c), as amended, is punishable as a second degree misdemeanor. Fla.Stat. § 475.42(2) (1989). The named Defendants, GEORGE STUART, JR. ("STUART"), as Secretary of the Florida Department of Professional Regulation,[1] and ROBERT A. BUTTER-WORTH ("BUTTERWORTH"), as Attorney General of the State of Florida, are responsible for enforcing the civil and criminal provisions of Chapter 475.

Non-party American Resort and Residential Development Association ("ARR-DA") publicly lobbied for the Amendment. ARRDA has now filed a motion to intervene in this action as of right, pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, to appear as *amicus curiae* on behalf of the Defendants (DE 24) (the "Motion"). ARRDA submitted a Memorandum of Law in support of its Motion (DE 25) (the "Supporting Memorandum"), to which the Plaintiffs responded (the "Response Memorandum") (DE 28) and ARR-DA then replied (the "Reply Memorandum") (DE 30).[2]

## ANALYSIS

### I. INTERVENTION

■ Rule 24 provides, in pertinent part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24. The Rule thus creates a four-part test for non-statutory intervention of right: (1) timeliness; (2) a sufficient interest; (3) impairment of that interest absent intervention; and (4) inadequate representation by the parties. *See Athens Lumber Co., Inc. v. Federal Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982). The movant bears the burden of establishing each of these four elements. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir.1989).

#### 1. Timeliness

■ " 'Timeliness' is not a word of exactitude or of precisely measurable dimensions." *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir.1970).[3] It must, rather, "be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). A district court must consider (a) the period of time during which the

---

**1.** When the suit was filed, Laurence Gonzalez was serving, and thus was named, as Secretary of the Florida Department of Professional Regulation. STUART has since succeeded Mr. Gonzalez in this capacity.

**2.** The Motion mentioned only "Rule 24," which includes provisions for permissive intervention. F.R.Civ.P. 24(b). The Supporting Memorandum and Reply Memorandum, however, clarify that

ARRDA seeks intervention as of right under Rule 24(a).

**3.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

putative intervenor knew or reasonably should have known of his interest in the case before moving to intervene, (b) the degree of prejudice to the existing parties resulting from a failure to move promptly, (c) the prejudice to the would-be intervenor if his motion is denied, and (d) any unusual circumstances that affect timeliness. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir.1984), citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir.1977).

#### a. Delay

RTR alleges that it first filed a lawsuit concerning Section 475.01(1)(c) in Florida Circuit Court on September 15, 1989. *See* Complaint at para. 15. RTR contends that ARRDA has been aware of all litigation developments since late 1989, which ARRDA does not dispute. The instant action was filed on March 1, 1990, and had been pending for more than one year before ARRDA filed its Motion. In the interim, RTR has been granted preliminary injunction and moved for final summary judgment (DE 14, 20).

#### b. Prejudice to Existing Parties

The mere grant of injunctive relief, however, does not render ARRDA's Motion tardy. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Allis-Chalmers Corp.*, 447 F.Supp. 766, 772 (E.D.Wisc.1978). More importantly, RTR has failed to show that ARRDA's delay in seeking intervention has significantly prejudiced its cause. Pursuant to the preliminary injunction, RTR has continuously operated its business free from the licensing requirements of Section 475.01(1)(c). Its Motion for Summary Judgment was, in fact, RTR's sole pleading in the 11 months following the Court's order.

#### c. Prejudice to ARRDA

"[T]he district court should apply a more lenient standard of timeliness if the would-be intervenor qualifies for intervention under [Rule 24(a)] than if he qualifies under [Rule 24(b)]." *Stallworth*, 558 F.2d at 266, citing *McDonald*, 430 F.2d at 1073; *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir.), *cert. denied sub nom., Trefina A.G. v. United States*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). As noted *supra*, ARRDA has moved to intervene as of right under Rule 24(a).

#### d. Unusual Circumstances

Neither ARRDA nor RTR has pointed to any unusual circumstances that affect the timeliness inquiry.

On balance, the Court finds that, despite ARRDA's delay in moving to intervene as of right, its motion is not untimely.

#### 2. Interest
#### a. Lobbyist

ARRDA, as a lobbyist, "claims an interest relating to the constitutionality of the statute which is the subject of this action." Motion at 5.[4] "Intervention of right must be supported by [a] 'direct, substantial, legally protectable interest in the proceeding.' In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber Co., Inc. v. Federal Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir.1982), citing *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) ("significantly protectable interest") (other citations omitted); *see also Worlds v. Dept. of Health and Rehabilitative Services*, 929 F.2d 591, 593–94 (11th Cir.1991).

In *Athens*, a corporation challenged the constitutionality of certain spending restrictions in the Federal Elections Cam-

---

**4.** ARRDA does not claim that it represents only individuals who will be economically harmed if Section 475.01(1)(c) is declared unconstitutional. *Compare Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 869 (8th Cir.1977); *see also International Union, United Automobile, Aerospace and Agri-cultural Implement Workers of America v. Brock*, 477 U.S. 274, 281–82, 106 S.Ct. 2523, 2528–29, 91 L.Ed.2d 228 (1986) (associational standing). Rather, ARRDA acknowledges that its membership includes "the public at large," Motion at 3, and proceeds on its lobbyist status.

paign Act. A union sought to intervene as of right, asserting "an interest in the outcome of the case because it will lose significant political ground if restrictions on corporate political expenditures are lifted." 690 F.2d at 1365. The Eleventh Circuit Court of Appeals affirmed an order denying the motion to intervene. The union had "no interest in the possibility of enforcement proceedings against the corporation," simply a "general concern" for the continued vitality of the restrictions. *Id.* at 1366. Likewise, ARRDA has no *direct interest* in the application of licensing requirements to RTR.

The Eleventh Circuit has yet to address the specific question whether a public interest group has a right to intervene in any litigation involving legislation which it sponsored or for which it lobbied. ARRDA cites three Ninth Circuit cases that seem to answer that question in the affirmative. *See Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir.1983); *Washington State Bldg. & Constr. Trades Council v. Spellman,* 684 F.2d 627 (9th Cir.1982); *State of Idaho v. Freeman,* 625 F.2d 886 (9th Cir. 1980). A district court within that Circuit has, however, properly criticized the decisions as "lacking any illuminating legal analysis on the issue of intervention." *Yniguez v. Mofford,* 130 F.R.D. 410, 415 (D.Ariz.1990); *see also Watt,* 713 F.2d at 532 (Wallace, J. dissenting) (*Freeman* and *Spellman* were "bereft of any legal analysis" of intervention).

In *Freeman,* the court, in the last paragraph of a three-paragraph opinion, held, without authority, that the National Organization for Women "has such an interest in the continued vitality of" the Equal Rights Amendment that it could intervene in a suit challenging the procedures for its ratification. 625 F.2d at 887. The *Spellman* court, noting only that Rule 24 "has received a liberal construction," and failing to cite even *Freeman,* held that a public interest group that sponsored a statute was entitled to intervene in an action challenging its constitutionality. 684 F.2d at 630.

In *Watt,* the National Audubon Society and other environmental groups sought to intervene in a suit questioning the legality of government action regarding a proposed conservation area. The district court held that "the Audubon Society interest was insufficient because it had no interest in the land which was the subject matter of the lawsuit...." The circuit court cited *Freeman* and *Spellman,* then wrote: "In light of our recent decisions there can be no serious dispute in this case concerning ... the existence of a protectable interest.... An adverse decision in this suit would impair the society's interest in the preservation of birds and their habitats." 713 F.2d at 528.

The Seventh Circuit Court of Appeals, upon a more thoughtful analysis, has "concluded that the status of lobbyist [does] not alone create a direct and substantial interest sufficient to support intervention as of right." *Keith v. Daley,* 764 F.2d 1265, 1269 (7th Cir.1985), citing *Wade v. Goldschmidt,* 673 F.2d 182 (7th Cir.1982). In *Wade,* a group that had lobbied for construction of a bridge sought to intervene in an action challenging the legality of the construction. The court wrote:

In a suit such as this, brought to require compliance with federal statutes regulating government projects, *the governmental bodies charged with compliance can be the only defendants.* As to the determination involved in this suit, *all other entities have no right to intervene as defendants.* Thus we hold that the proposed intervenors' interests do not relate "to the property or transaction which is the subject of the action" and they have therefore failed to assert an interest in the lawsuit sufficient to warrant intervention as of right.

673 F.2d at 185 (emphasis added) (citations omitted).

In *United States v. 36.96 Acres of Land,* 754 F.2d 855, 859 (7th Cir.1985), the United States brought a condemnation action to acquire Crescent Dune, located on the southern edge of Lake Michigan. The Save the Dunes Council, a public interest group that had "lobbied intensively for na-

tional legislation protecting the dunes" for more than thirty years, sought to intervene. The court held that only the condemning governmental authority and the landowner had significantly protectable interests in condemnation of the dunes. "While the Council's aesthetic and environmental interest in Crescent Dune may indeed be legitimate and demonstrable, we cannot say that it is direct, substantial, or legally protectable." 754 F.2d at 859.[5]

*Keith v. Daley,* 764 F.2d 1265 (7th Cir. 1985), applied *Wade* and *36.96 Acres* to a factual scenario analogous to the instant case. An anti-abortion organization (IPC) therein sought to intervene in a suit brought by a group of physicians who challenged the constitutionality of an Illinois statute regulating abortion. The district court denied the motion to intervene as of right, and the circuit court affirmed.

> IPC's interest as chief lobbyist in the Illinois legislature in favor of [the statute] is not a direct and substantial interest sufficient to support intervention.

> . . . . .

> In an America whose freedom is secured by its ever vigilant guard on the openness of its "marketplace of ideas," IPC is encouraged to thrive, and to speak, lobby, promote, and persuade, so that its principles may become, if it is the will of the majority, the law of the land. Such a priceless right to free expression, however, does not also suggest that IPC has a right to intervene in every lawsuit involving abortion rights, or to forever defend statutes it helped to enact. Rule 24(a) precludes a conception of lawsuits,

even "public law" suits, as necessary forums for such public policy debates. 764 F.2d at 1269–70. The court noted that those persons "required to defend and enforce the law of the state" are the only proper defendants in such an action. *Id.*

This Court adopts the reasoning of *Keith.* An important purpose of Rule 24(a) is "to foster economy of judicial administration." *Stallworth,* 558 F.2d at 265. This purpose is hardly served by granting lobbyists the full right to intervene. Moreover, such an expanded definition of "interest" might open the courtroom door to every citizen who has called his congressman concerning legislation, *see Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), thereby compromising "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

In short, ARRDA's lobbying interest is too nebulous to constitute a "real party in interest" in litigation challenging the constitutionality of a state statute.

### b. Precedent

ARRDA, as a "national voluntary association," seeks to broaden its claim of interest by asserting that "this Court's determination of the constitutionality of the Florida statute may serve as precedent for legislative or judicial action upon further amendments to Section 475, Florida Statutes, and other statutes under consideration around the Country." Motion at 3–5. Yet ARRDA's lobbying interest in potential future legislation is no more protectable

---

5. The court stated that "[t]he interest of a proposed intervenor ... must be greater than the interest sufficient to satisfy the standing requirement." 754 F.2d at 859. Other circuit courts have reached different conclusions. *E.g., Southern Christian Leadership Conference v. Kelley,* 747 F.2d 777, 779 (D.C.Cir.1984) (interest necessary to intervene is equivalent to interest necessary to confer standing). The Supreme Court has expressly declined to decide "whether a party seeking to intervene before a District Court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III." *Diamond v. Charles,* 476 U.S. 54, 69, 106 S.Ct. 1697, 1707, 90 L.Ed.2d 48 (1986).

The Eleventh Circuit Court of Appeals, while noting the split of authority, has not defined the precise relationship between the interests required under Rule 24 intervention and Article III standing. *Chiles,* 865 F.2d at 1212–13. The court has held only that "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable cause and controversy between the parties already in the lawsuit. The standing cases, however, are relevant to help define the type of interest that the intervenor must assert." *Id.* at 1213.

than its interest in the current amendment to Section 475.01(1)(c).

Considerations of *stare decisis* may support intervention where the putative litigant "claims an interest in the *very property and very transaction* that is the subject of the main action...." *Chiles*, 865 F.2d at 1214, citing *Atlantis Development Corp. v. United States*, 379 F.2d 818, 829 (5th Cir.1967) (emphasis added). The persuasive force of a district court opinion, however, "is not reason enough to complicate litigation by adding as parties all who might be concerned about the court's choice of words." *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 532 (7th Cir.1988). If the movant lacks a legally protectable interest, "a potential *stare decisis* effect need not even be considered." *Manasota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir.1990).

### 3. Impairment

*Stare decisis* thus affects, not the interest at stake, but the *impairment* of an already sufficient interest. *See Chiles*, 865 F.2d at 1214. While ARRDA's legal right and ability to lobby legislatures are unaffected by this litigation, the Court's opinion "may supply that practical disadvantage" that would impair its future activities. *Id.* On the separate issue of impairment, therefore, this Court finds that ARRDA has met its burden.

### 4. Representation

Even if ARRDA's generalized lobbying interest were deemed sufficient, there is no reason to doubt that this interest will be adequately represented by the named Defendants. As the Eleventh Circuit Court of Appeals wrote in *Athens:*

> The goal of the union is to uphold the constitutionality of section 441b(a) of [the Federal Elections Campaign Act]. This is precisely the interest which has been vigorously presented by the [Defendant Federal Election Commission] through-

out these proceedings. Because both the union and the FEC have the same objective, we presume that the union's interest is adequately represented.

690 F.2d at 1366 (citations omitted); *see also Keith*, 764 F.2d at 1270 ("Adequacy can be presumed when the party on whose behalf the applicant seeks intervention is a government body or officer charged by law with representing the interests of the proposed intervenor.").

STUART and BUTTERWORTH have actively litigated this case since its filing.[6] ARRDA has not alleged, nor does the record evince, any collusion between these Defendants and RTR, any adversity to ARRDA's position, or any lack of competence on their part. *See Florida Power & Light Co. v. Belcher Oil Co.*, 82 F.R.D. 78, 81 (S.D.Fla.1979). Because STUART and BUTTERWORTH can be expected to defend the constitutionality of Section 475.-01(1)(c), ARRDA's interest is adequately represented.

ARRDA has thus failed to establish the second and fourth parts of the test described in *Athens*, 690 F.2d at 1366, sufficient interest and inadequate representation. It cannot intervene as of right under Rule 24(a).

## II. AMICUS CURIAE

■ In the alternative, ARRDA has sought permission to file an *amicus curiae* memorandum in opposition to RTR's Motion for Summary Judgment. RTR has indicated that it does not oppose this portion of the Motion. Response Memo at 15.

■ While Federal Rule of Appellate Procedure 29 and Supreme Court Rule 37 provide for the filing of *amicus curiae* briefs, the Federal Rules of Civil Procedure lack a parallel provision regulating *amicus* appearances at the trial level. The district court, however, has the inherent authority to appoint *amici curiae*, or "friends of the court,"[7] to assist it in a proceeding. *Unit-*

---

6. *See* DE 8 (motion to dismiss), DE 12 (motion in opposition to motion for preliminary injunction), DE 15 (notice of objections to proposed order), DE 18–19 (motion to abate and support-ing memorandum), DE 23 (renewed motion to abate).

7. *Black's Law Dictionary* 75 (5th Ed.1979).

*ed States v. Michigan,* 116 F.R.D. 655, 660 (W.D.Mich.1987). "Inasmuch as an *amicus* is not a party and 'does not represent the parties but participates only for the benefit of the court, it is solely within the discretion of the court to determine the fact, extent, and manner of participation by the *amicus.*' " *News and Sun–Sentinel Co. v. Cox,* 700 F.Supp. 30, 31 (S.D.Fla.1988) (citations omitted).

Several courts have approved the use of such appearances in lieu of intervention. *E.g., Piedmont Paper Products, Inc. v. American Financial Corp.,* 89 F.R.D. 41, 45 (S.D.Ohio 1980); *see Athens,* 690 F.2d at 1367 (upon denying motion to intervene, court suggested that "the proper course of action may be to file a motion for leave to file an *amicus* brief"). "Participation as *amicus curiae* will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case is the strongly preferred option." *Bethune Plaza,* 863 F.2d at 533.

### CONCLUSION

Based upon the foregoing, it is hereby

ORDERED and ADJUDGED as follows:

1. The Motion to Intervene is DENIED.

2. The Motion to Appear as Amicus Curiae is GRANTED for the limited purpose of filing a memorandum of law in opposition to RTR's Motion for Summary Judgment.

3. ARRDA shall file its memorandum of law, not to exceed fifteen (15) pages in length, within twenty (20) days hereof.

DONE and ORDERED.