**Beverly C. DAGGETT, et al., Plaintiffs,**

v.

**Peter B. WEBSTER, et al., Defendants.**

**No. CIV. 98–223–B–H.**

United States District Court,
D. Maine.

Jan. 19, 1999.

---

Nathaniel M. Rosenblatt, Farrell, Rosenblatt & Russell, Bangor, Mark J. Lopez, American Civil Liberties Union, New York, NY, for Plaintiffs.

Daniel M. Snow, Pierce, Atwood, Portland, James Bopp, Jr., Bopp, Coleson & Bostrom, Terre Haute, IN, for Consolidated Plaintiffs.

Paul Stern, Andrew S. Hagler, Assistant Attorney General, Augusta, ME, for Defendants.

## ORDER ON MOTION TO INTERVENE

HORNBY, Chief Judge.

Several candidates for state office, would-be contributors, the Libertarian Party of Maine, the Maine Right to Life Committee Political Action Committee State Candidate Fund and the National Right to Life Political Action Committee State Fund have sued the Maine Commission on Governmental Ethics and Election Practices, the Maine Secretary of State, and the Maine Attorney General.[1] They request a declaration and injunction against certain provisions of Maine's citizen campaign financing law, including the Maine Clean Election Act, on the grounds that the law violates the First and Fourteenth Amendments. The law applies to the next election. The defendants are actively defending the lawsuit through the Office of the Attorney General. Now, certain other candidates for state office who applaud the provisions of the Maine Clean Election Act have moved to intervene on the side of the defendants under Fed.R.Civ.P. 24 in order to support the constitutionality of the statute. The motion to intervene is DENIED.

In *Daggett I,* I denied a motion to intervene filed by the Maine Citizens for Clean Elections, an incorporated association of several Maine organizations that worked to draft, sponsor and campaign for the initiative that became the Maine Clean Election Act. *See National Right to Life Political Action Comm. State Fund v. Devine,* Civ. No. 96–359–P–H (D.Me. Mar. 19, 1997) (order denying motion to intervene). This motion is different. The would-be intervenors this time are not people or groups who pressed for the law's enactment; instead, they are candidates for election who will be directly affected by the law. However, the determining issue here is not their interest in the outcome, but whether their interest is already adequately represented by the Attorney General. Since I wrote in *Daggett I,* the First Circuit has spoken again to this last of the four criteria (timeliness; interest; potential prejudice; adequacy of representation) for intervention as of right under Fed. R.Civ.P. 24(a). The First Circuit recognized the United States Supreme Court's statement that only a "minimal showing" of inadequate representation is required. *Public Serv. Co. of New Hampshire v. Patch,* 136 F.3d 197, 207 (1st Cir.1998) (referencing *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). But the First Circuit instructed that the fourth criterion is never-

---

1. This is the second such lawsuit. I dismissed most of the first lawsuit as premature. *See Daggett v. Devine,* 973 F.Supp. 203 (D.Me.1997); *National Right to Life Political Action Comm.* *State Fund v. Webster,* Civ. Nos. 96–359–P–H, 97–56–B–H, 1997 WL 703388 (D.Me. Oct.22, 1997) (referred to collectively as "*Daggett I* ").

theless "more than a paper tiger." *Patch*, 136 F.3d at 207.[2] Here, the Attorney General is mounting a strong defense in support of the statute. The Attorney General's office is completely adequate to the task. Moreover, its goals are identical to those of the would-be intervenors. As the First Circuit stated in *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979): "Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation. To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." No such demonstration has been made here. To be sure, in *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir.1992), the First Circuit ordered intervention in a lawsuit being defended by the Secretary of Commerce. But in *Mosbacher*, the Secretary seemed to have a divided allegiance. Specifically, he agreed to a consent decree in the lawsuit filed against him, and the intervenors, seven commercial fishing groups who were unhappy with the consent decree, wanted to defend the previous state of affairs about which the Secretary seemed to be lukewarm. *Id.* at 44. In other words, discretionary policy choices were open to the Secretary in implementing the law, and the Secretary therefore could not be relied upon to defend the views of the intervenors—who sought a different outcome than that with which the Secretary might be satisfied. Here, in contrast, there is no such discretion open to the defendants.

This lawsuit concerns the constitutionality of a statute. Either it is constitutional or it is unconstitutional, and the defendants in fact are defending the constitutionality of the law with full vigor. There is no reason to believe that the defense will be inadequate. Instead, like the would-be intervenors, the defendants want to uphold the statute's constitutionality in all its aspects.

The defendants nevertheless support intervention, *see* Defs.' Mem. in Supp. of Mot. to Intervene, docket item 16, *Daggett v. Webster*, Civ. No. 98–223–B–H (D.Me. Dec. 11, 1998), and agree with the would-be intervenors that the would-be intervenors may raise certain arguments in behalf of the statute that the State defendants would not. *Id.; see also* Mot. to Intervene and Mem. of Law in Supp. of Mot. to Intervene, docket item 2, *Daggett v. Webster*, Civ. No. 98–223–B–H (D.Me. Nov. 19, 1998). But that is not enough to support intervention. First, in *Patch*, the First Circuit has already rejected that basis. *Patch*, 136 F.3d at 210 (argument that proposed intervenor would set forth a different "angle" on the legal arguments without stating anything more specific "cannot bear the weight of a claim that adequate representation is lacking"). Second, to recognize that argument would allow the parties in every case to control intervention by simply having the existing party in a lawsuit agree not to make certain arguments so that the would-be intervenors could assert that they would raise them. Third, the filing of amicus briefs is adequate to raise additional

---

**2.** *Patch* went on to say that "the burden of persuasion [for supporting intervention] is ratcheted upward ... [where the defendants] are defending ... in their capacity as members of a representative governmental body." 136 F.3d at 197. This language is problematic, for the court was talking about the New Hampshire Public Utilities Commission, a body appointed by the governor with the advice and consent of the executive council. N.H.Rev.Stat. Ann. § 363:3. The term "representative governmental body" is therefore difficult to interpret. The two cases cited by the First Circuit in this connection are cases that increase the burden of persuasion when the government is in a lawsuit in its *parens patriae* capacity. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir.1996); *United States v. Hooker Chemicals & Plastics*, 749 F.2d 968, 985 (2d Cir.1984). These cases state that when the gov-

ernment acts in a *parens patriae* capacity (an example of a *parens patriae* action is a state attorney general bringing actions on behalf of state residents for anti-trust offenses), *see* 15 U.S.C. § 15c(a), it is presumed to be representing adequately all the interests of the people, with an attendant higher threshold to justify intervention by private persons. Here, the defendants are not defending the lawsuit in a *parens patriae* capacity, but are simply fulfilling the traditional governmental role of defending the constitutionality of a law under which they operate. But in *Patch* also, the PUC was not acting in a *parens patriae* role, simply as a regulator of electrical utilities. Since I cannot discern what *Patch* means on this point, I do not apply its higher burden requirement. Obviously, if it applies here, the denial of intervention is buttressed further.

arguments or theories that a particular party has not raised. The making of better or more comprehensive arguments is not the substance of intervention. I conclude that the would-be intervenors have not satisfied the final standard of Fed.R.Civ.P. 24(a).

Permissive intervention is DENIED for the same reasons I set forth in *Daggett I. See National Right to Life Political Action Comm: State Fund v. Devine,* Civ. No. 96–359–P–H (D.Me. Mar. 19, 1997) (order denying motion to intervene). The current would-be intervenors' interests in supporting the Maine Clean Election Act can be adequately satisfied by permitting them to participate as *amicus curiae. See Resort Timeshare Resales, Inc. v. Stuart,* 764 F.Supp. 1495, 1500–01 (S.D.Fla.1991). Adding these additional defendants to defend the same case that the Attorney General is already defending would only complicate the proceedings without adding any advantage.

The motion to intervene is DENIED, but the would-be intervenors may file legal memoranda as *amicus curiae.*

SO ORDERED.