**ALLIANCE OF AUTOMOBILE MANUFACTURERS, Plaintiff,**

v.

**Dan A. GWADOWSKY and G. Steven Rowe, Attorney General for the State of Maine, Defendants.**

**No. CIV. 03–154–BW.**

United States District Court, D. Maine.

Dec. 22, 2003.

Bruce W. Hepler, Friedman, Gaythwaite, Wolf & Leavitt, Portland, ME, Russell R. Eggert, Mayer, Brown, Rowe & Maw, Chicago, IL, for Alliance of Automobile Manufacturers, Plaintiff.

Francis E. Ackerman, Assistant Attorney General, Augusta, ME, for Secretary of State, Maine, Attorney General, Maine, Defendants.

Michael Kaplan, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Maine Auto Dealers Association, Amicus.

## ORDER ON MOTION OF MAINE AUTO DEALERS ASSOCIATION FOR *AMICUS CURIAE* "PLUS" STATUS

WOODCOCK, District Judge.

Plaintiff Alliance of Automobile Manufacturers (Alliance) filed an action against Defendants Dan A. Gwadowsky and G. Steven Rowe in their respective capacities as State of Maine Secretary of State and State of Maine Attorney General (State), seeking to enjoin defendants from enforcing newly enacted Section 10 of the Maine Motor Vehicle Franchise Law. 10 M.R.S.A. Section 1176; L.D. 1294 (121st Legis.2003). L.D. 1294 prohibits motor vehicle manufacturers from recovering the costs of reimbursing their Maine franchisees for parts and labor. The Maine Auto Dealers Association (MADA) moves this court to obtain *amicus curiae* "plus" status in the litigation; the Alliance does not object to MADA's participation as a traditional *amicus,* but does object to its participation as *amicus curiae* "plus." The State does not object to MADA's motion.

Under Rule 24, a non-party may move to intervene in pending litigation, either as a matter of right, Fed.R.Civ.P. 24(a), or by permission. Fed.R.Civ.P. 24(b). MADA makes no claim it has a right to intervene under Rule 24(a) and has not sought the permission to intervene under Rule 24(b). Instead, it has sought this court's permission to act as *amicus curiae,* "friend of the court." Black's Law Dictionary 83 (7th ed.1999).

Federal Rule of Appellate Procedure 29 and Supreme Court Rule 37 expressly regulate the filing of *amicus curiae* briefs. However, the Federal Rules of Civil Procedure are silent as to the conditions under which a trial court should permit *amicus* appearances and the restrictions, if any, that should attend its appearance. *Resort Timeshare Resales, Inc. v. Stuart,* 764 F.Supp. 1495, 1500–01 (S.D.Fla.1991). The district court retains "the inherent authority" to appoint *amicus curiae* "to assist it in a proceeding." *Id.* at 1500; *United States v. Michigan,* 116 F.R.D. 655, 660 (W.D.Mich.1987); *Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir.1982). An *amicus* is not a party and "does not represent the parties but participates only

for the benefit of the court." *Timeshare,* 764 F.Supp. at 1501 (quoting *News and Sun–Sentinel Co. v. Cox,* 700 F.Supp. 30, 31 (S.D.Fla.1988)).

■ Although the acceptance of *amicus* briefs on issues of law is "within the sound discretion of the court," Chief Judge Bailey Aldrich stated that "an *amicus* who argues facts should rarely be welcomed." *Strasser v. Doorley,* 432 F.2d 567, 569 (1st Cir.1970). The *Strasser* Court went on to say,

> we believe a district court, lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance.

*Id.* at 569. It remains within the discretion of the court to determine "the fact, extent, and the manner of participation by the *amicus.*" *Alexander v. Hall,* 64 F.R.D. 152, 155 (D.S.C.1974). Commonly, *amicus* status is granted only when there is an issue of general public interest, the *amicus* provides supplemental assistance to existing counsel, or the *amicus* insures a "complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Id.* at 155.

MADA does not seriously claim that the Attorney General of the State of Maine is unable to provide adequate representation in defending the newly enacted statute. *See Daggett v. Webster,* 190 F.R.D. 12, 13 n. 1 (D.Me.1999) ("Maine's Attorney General's Office typically performs in the highest professional manner, equal to the skill and performance of private lawyers"). Instead, MADA notes it had strongly supported the legislation; has a unique and special interest in the outcome of this litigation, is in a position to offer the court

guidance on the implications of the legislation from an industry viewpoint, and will be able to supply the court with witnesses to supplement the court's knowledge base and inform its judgment.

Alliance argues that MADA should not be allowed under the guise of *amicus* status to do what it cannot under Rule 24: to intervene and participate fully in the litigation. It contends the Attorney General's Office is fully capable of defending the State in the pending litigation and any benefit from MADA's *amicus* "plus" status would be outweighed by other burdens its status would impose upon the court and the parties. Alliance draws support for its position from *Daggett v. Webster,* a case decided by then Chief Judge D. Brock Hornby. In *Daggett,* Judge Hornby articulated the concerns for judicial economy that would inevitably follow if *amici* were allowed to participate fully. *Id.* at 14. Chief Judge Hornby carved out a perceptive salutary compromise, an approach this court is adopting for this case. Chief Judge Hornby granted the movants *amicus* status and allowed their participation as *amicus* "plus," but restricted their role. *Id.* at 14–15.

Cognizant of the concerns Judge Hornby expressed, this court has concluded to approve without restriction MADA's request to "participate in this matter on the side of the State," *MADA Memorandum* at 1, would create what one court described as "one of the rather strange creatures known as a litigating *amicus.*" *United States v. Michigan,* 116 F.R.D. at 661. While MADA's role should be circumscribed to avoid undue delay, duplication and expense, the court has also concluded it could benefit from MADA's specialized expertise.

■ First, this court accords MADA traditional *amicus curiae* status in this

matter. As such, MADA may file memoranda and briefs on motions before the court and in accordance with *Daggett v. Commission on Governmental Ethics and Election Practices,* 172 F.3d 104, 112 (1st Cir.1999), MADA may present "legislative facts." In its role as traditional *amicus curiae,* MADA may file its own briefs without direction from the Attorney General. Although participation at oral argument is not necessarily a right accorded *amicus curiae,* MADA shall be allowed to participate separately in oral arguments on dispositive motions, if any.

In addition, this court grants MADA *amicus curiae* "plus" status, but with restrictions. First, MADA shall receive notice and service of all documents and events just as if it were a party to the case. Second, MADA's role as *amicus curiae* "plus" in the case shall be subordinate to the Attorney General and subject to his discretion. If there are witnesses at trial or deposition where the Attorney General's Office is willing to let MADA's lawyer conduct the examination or cross-examination in place of the Assistant Attorney General, this is permitted; however, both the Assistant Attorney General and MADA shall not be permitted to examine or cross-examine the same witness. Similarly, MADA shall have no independent right to engage in written forms of discovery. The court expects the Attorney General's Office to take full advantage of MADA's resources, evidence or assistance where to do so will help the Attorney General in the defense of this case.

SO ORDERED.